UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
DELTA DIVISION

OLAJUWON SMITH,                                                                    PLAINTIFF
ADC #156184

V.                          No. 2:20-CV-104-KGB-JTR

GAYLON LAY, Warden,
East Arkansas Regional Unit, ADC, *et al*.                          DEFENDANTS

### RECOMMENDED DISPOSITION

The following Recommended Disposition has been sent to United States District Judge Kristine G. Baker. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the date of this Recommendation. If you do not file objections, Judge Baker may adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may waive the right to appeal questions of fact.

### I. Introduction

On May 14, 2020, Plaintiff Olajuwon Smith ("Smith"), a prisoner in the East Arkansas Regional Unit ("EARU") of the Arkansas Division of Correction ("ADC"), initiated this § 1983 action alleging violations of his constitutional rights. Read together, his Complaint *(Doc. 1)*, Amended Complaint *(Doc. 5),* and

Substituted Complaint *(Doc. 9)* allege that, after the outbreak of COVID in the EARU, Warden Gaylon Lay ("Lay"), Major Kenyon Randle ("Randle"), and Major Jeffery Dean created unconstitutional conditions of confinement by: (1) failing to require all EARU employees to wear gloves and to change gloves after touching other prisoners or unsanitary surfaces; (2) making Smith work in the field in close proximity to other prisoners, while using tools that had been touched by hundreds of other people; (3) allowing infected prisoners to work throughout EARU; and (4) failing to provide Smith with adequate cleaning supplies to sanitize the barracks.

Smith's pleadings also allege that Keith Waddle ("Waddle") a disciplinary hearing officer, wrongly found him guilty of a major disciplinary because Smith refused to work under those dangerous conditions. Later, ADC Director Dexter Payne ("Payne") upheld Waddle's decision on the disciplinary. According to Smith, Waddle and Payne subjected him to cruel and unusual punishment for their roles in convicting him of this disciplinary. *Doc. 9 at 10-11*.

Finally, Smith alleges that Randle forced him to work in retaliation for filing grievances. *Id. at 10*.

On May 21, 2021, Lay, Randle, Dean, Waddle, and Payne (referred to collectively as "the Defendants"), filed a Motion for Summary Judgment *(Doc. 25),* Brief *(Doc. 26),* and a Statement of Undisputed Material Facts *(Doc. 27),* which is supported by the following attached documents: (1) Administrative Directive 19-34

2

(Exhibit A) which reflects the complete grievance procedure that must be complied with by ADC inmates to fully and properly exhaust their administrative remedies[1]; (2) Affidavits of Terri Brown, the ADC Grievance Supervisor (Exhibit B), and Debra Mills, the EARU Grievance Supervisor (Exhibit C); (3) a complete list of all grievances filed by Smith between June 19, 2019 and August 31, 2020, along with copies of Grievance EA-20-00514, initiated on April 16, 2020; EA-20-00518 and EA-20-00526, both of which were initiated on April 20, 2020; and EA-20-00650 and EA-20-00653, both of which were initiated on April 30, 2020 (Exhibit D).

Despite being served with these summary judgment motion papers shortly after they were filed on May 21, 2021, Smith has not filed a Response or disputed any of the facts set forth in Defendants' Statement of Undisputed Facts. Accordingly, all of those facts are now deemed to be *undisputed*. *See* Rule 56(e)(2) of the Federal Rules of Civil Procedure and Local Rule 56.1(c).

The now indisputable facts set forth in Defendants' Statement of Undisputed Facts make it clear that Smith did not raise and exhaust any of the claims he is asserting against any of the Defendants. Accordingly, for the reasons explained

---

[1] The Prison Litigation Reform Act ("PLRA") requires prisoners bringing § 1983 actions to fully exhaust their administrative remedies on each of their claims *before* they file their § 1983 claims in federal court. This means that, as to each § 1983 claim Smith is now asserting against the Defendants, he was required to proceed through each of the three steps described in the ADC's Inmate Grievance Procedure. *See* Exhibit A to Defendants' Statement of Undisputed Facts at *Doc. 27.*

below, the Court should grant Defendants' Motion for Summary Judgment and all of Smith's claims should be dismissed, without prejudice.

## II. Discussion

**A. Smith's Obligation to Fully and Properly Exhaust His Administrative Remedies On Each of His Claims.**

The PLRA specifies that "no actions shall be brought with respect to prison conditions under Section 1983 of this title *or any other Federal law*, by a prisoner confined in any jail, or other correctional facility *until such administrative remedies as are available are exhausted.*" (emphasis added). 42 U.S.C. § 1997e. "Congress has mandated exhaustion" eliminating the courts' discretion to excuse exhaustion. *Booth v. Churner*, 532 U.S. 731, 739, 741 (2001); *Accord: Porter v. Nussle*, 534 U.S. 516 (2002) (prisoners who claim denial of their federal rights while incarcerated must meet 1997e(a)'s exhaustion requirement before commencing a civil rights action). The PLRA "requires a prisoner to exhaust 'such administrative remedies as are available' *before* suing over prison conditions." *Booth*, 532 U.S. *at* 733-734 (emphasis added).

The purpose of the PLRA's mandatory exhaustion requirement is to allow state correctional facilities the opportunity to "address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved and improving litigation that does occur by leading to the preparation of a useful record." *Jones v. Bock*, 549 U.S. 199, 219

(2007); *Porter* at 524-25 (the exhaustion requirement allows prison officials the time and opportunity to review and address complaints internally before the prisoner is allowed to initiate a federal § 1983 claim).

Finally, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id. at 218*. *See Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006) (holding that to properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules defined by the prison grievance process itself); *see also Townsend v. Murphy*, 898 F.3d 780, 783 (8th Cir. 2018). Thus, Smith was required to fully exhaust each of his claims against each Defendant, in accordance with the ADC's three step exhaustion process, *before* he initiated this action. *Jones v. Norris*, 310 F.3d 610, 612 (8th Cir. 2002).

AD 19-34 comprehensively explains the Administrative Regulations, and policies governing how an inmate must go about properly filing and fully exhausting a grievance through each of the three steps in the ADC's administrative process: (1) File a Step One Informal Resolution naming each ADC employee involved in the matter and describing the issue or complaint to the designated unit level problem solver; (2) If the Informal Resolution is not resolved to the satisfaction of the inmate, he must file a Step Two Formal Grievance with the Warden; and (3) If the Formal

5

Grievance is found to be "without permit," he must file a Step Three appeal to the ADC Deputy Director.

**B. The Now Undisputed Facts Establish that Smith Failed to Fully and Properly Exhaust Any of His Relevant Grievances Raising the Claims He Seeks to Pursue In This Action.**

In Brown's sworn Declaration (Exhibit B to Doc. 27), she explains that, *before* Smith initiated this action on May 14, 2020, he submitted five grievances raising matters or concerns relevant to the § 1983 claims he is asserting against the Defendants: (1) EA-20-00514; (2) EA-20-00518; (3) EA-20-00526; (4) EA-20-00650; and (5) EA-20-00653. Exhibit B to Doc. 27 at ¶ 16 and 17. Brown's Declaration goes on to recite the following undisputed facts establishing that Smith failed to properly, and fully, or timely exhaust any of those grievances.

1. EA-20-00514

Smith initiated this grievance by filing a Step One informal resolution on April 16, 2020. Five days later, on April 21, 2020, he completed and submitted the "Step Two: Formal Grievance" which was designated EA-20-00514. Smith received a response to this grievance from the Warden or his designee on June 2, 2020. Exhibit B at § 18.[2]

---

[2] AD 19-34 § IV(f)(¶7) states that "every inmate grievance should receive a written response . . . within 20 working days of receipt. If such a response is not received within 20 working days, "an inmate . . . may move to the next level of the process [a Step Three Appeal] to the Chief Deputy/Assistant Director." *Id. at* ¶9. To fall within the 20 working day deadline, Smith should have received a response to this

While Smith later filed a timely Step Three appeal to the ADC Assistant Deputy Director, he did not receive a final decision of that grievance until July 8, 2020, almost two months after he filed this action.

Accordingly, while Smith fully and properly exhausted EA-20-00514, he clearly did not *complete* the exhaustion process *before* he initiated this action. *Id.* at ¶*18*. Thus, Smith cannot rely on that grievance to establish that he properly exhausted any of the claims he is asserting in this action.

2. EA-20-518 and EA-20-00526

AD 19-34e § IV(J)(1)(b) (*Doc. 27 at Exhibit A)* explains that inmates are only allowed to submit *three* formal Step Two grievances, in any seven-day period, beginning on Saturday and ending on Friday. If an inmate exceeds filing three grievances within the defined 7 day period, *only the first 3* formal Step Two grievances "will be accepted for an investigation and response." *Id.* Additional Step Two grievances submitted during this seven-day period, which exceed the three grievance limit, will be "logged and reviewed to determine if an emergency exists [and if it does not] those grievances will be logged out on the same day received

---

grievance on or before May 14, 2020. While he could have elected to proceed to Step Three on May 15, he decided to await on the Warden's Step Two response, which he received on July 8, 2020. However, regardless of which election Smith made, it would have been impossible for him *to* c*omplete* the third and final step of the exhaustion process for EA-20-00514 *before* he initiated this action on May 14, 2020.

7

[and each of these unit level Grievance Forms will reflect] 'No action necessary - - exceeds weekly limit,' dated and signed." Exhibit B to Doc. 27 at ¶13.

Between Monday, April 20, and Wednesday, April 22, 2020, Smith submitted five Step Two formal grievances that were received and designated in the following order: (1) EA-20-00309; (2) EA-20-00510; (3) EA-20-00514; (4) *EA-20-00518*; and (5) *EA-20-00526*. *Id.* at *¶20.* As the fourth and fifth grievances received, during the seven day period beginning Saturday, April 18, and ending Friday, April 24, EA-20-00518 and EA-20-00526, were marked "no further action necessary;" they were not investigated; and no response was made to them. *See* AD 19-34 § IV(J)(1)(b).

Accordingly, because the claims in those two grievances were procedurally defaulted and never resolved on the merits, they were not fully and properly exhausted. Thus, Smith cannot rely on either of those grievances to establish that he fully and properly exhausted any of the claims he is asserting in this action.

3. EA-20-00650

Smith filed EA-20-00650 as an informal resolution, on April 30, 2020. After receiving a response he deemed unsatisfactory, Smith submitted a formal Step Two grievance on May 5, 2020. The Warden submitted a response on June 17, 2020. Smith submitted a timely Step Three appeal to the Assistant Deputy Director, who denied the appeal on July 28, 2020, over two months *after* Smith initiated this action. *Id.* at *¶22.*

Accordingly, Smith cannot rely on that grievance to establish that he fully and properly exhausted any of the claims he is asserting in this action.

4. EA-20-00653

Smith filed EA-20-00653 as an informal resolution on April 30, 2020. After receiving a response he deemed unsatisfactory, Smith submitted a formal Step Two grievance on May 5, 2020.

As previously explained, AD-19-34 § IV(F) (¶7) specifies that, if the Warden or his designee fails to provide an inmate a written response to a Step Two grievance, within 20 working days of its receipt, "an inmate . . . may move to the next level of the process [a Step Three appeal] to the Chief Deputy/Assistant Director." The 20th working day, after Smith submitted his Step Two grievance was June 2, 2020, approximately two weeks *after* he initiated this action. Rather than proceeding with his Step Three appeal, on June 2, 2020, Smith did not do so, and ultimately received the Warden's response on August 25, 2020.

After receiving the Step Two response, Smith did *not* file a Step Three appeal. Thus, because he failed to exhaust his administrative remedies on EA-20-00653, he cannot rely on that grievance to establish that he fully and completely exhausted any of the claims he is asserting in this action.

## III. Conclusion

Smith did not file a Response to Defendants' Motion for Summary Judgment and did not contest any of the facts set forth in Defendants' Statement of Undisputed Material Facts, all of which are now deemed to be undisputed. Based on these undisputed facts, which are fully supported by the attached documents, Smith failed to fully and properly exhaust any of the relevant grievances he filed in connection with the claims he is asserting in this action.

Accordingly, I recommend that the Court grant Defendants' Motion for Summary Judgment, and dismiss, without prejudice, all of Smith's claims against the Defendants.

DATED this 10th day of February, 2022.

_____
UNITED STATES MAGISTRATE JUDGE